IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

| | |
|---|---|
| AMANDA HARRILL, individually and as adoptive parent of M.P., <br><br> Plaintiff, <br><br> v. <br><br> JENNIFER ROSENBAUM; JOSEPH ROSENBAUM; GEORGIA DEPARTMENT OF HUMAN SERVICES; SAMANTHA WHITE; AND TAMARA WARNER, <br><br> Defendants. | CIVIL ACTION NO.: 6:21-cv-33 |

**O R D E R**

This action is before the Court on Defendants Jennifer Rosenbaum and Joseph Rosenbaum's Motion to Dismiss. (Doc. 6.) Plaintiff Amanda Harrill initiated this suit on March 5, 2021, asserting claims for negligence against the Rosenbaums and Defendant Georgia Department of Human Services ("GDHS") as well as a Fourteenth Amendment substantive due process claim pursuant to 42 U.S.C. § 1983 against Defendants Samantha White and Tamara Warner. (Doc. 1-1, pp. 2, 21–28.) Defendants Jennifer and Joseph Rosenbaum then filed the at-issue Motion to Dismiss, seeking to dismiss Plaintiff's claim against them (in Count I of the Complaint) for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). (Doc. 6.) Specifically, the Rosenbaums argue that official immunity bars the negligence claim alleged against them. (See id.) The Motion to Dismiss has been fully briefed, (see docs. 23, 24, 26, 27), and, for the reasons explained below, the Court **DENIES** Defendants Jennifer and Joseph Rosenbaum's Motion to Dismiss. (Doc. 6.) The Court further **ORDERS** Plaintiff to file a First Amended Complaint following the parameters set forth in the Conclusion section, infra.

## BACKGROUND

I.     **Factual Background**

This action arises out of the injuries sustained by a minor child, M.P., while she and her sister were under the care of Defendants Jennifer and Joseph Rosenbaum. (See doc. 1-1, pp. 2–29.) According to the Complaint, in April 2015, GDHS's Division of Family and Children Services ("DFCS") obtained temporary legal and physical custody of M.P., a four-year old child, and her younger sister, because their biological parents were unable to care for them. (Id. at pp. 9–10.) Around the same time, Jennifer Rosenbaum was a third-year law student interning in the Henry County Juvenile Court. (Id. at p. 10.) After learning of M.P. and her sister's placement in foster care, Jennifer Rosenbaum and her husband, Joseph Rosenbaum, sought to obtain custody of the children. (See id. at pp. 10–11.)

Defendants Samantha White and Tamara Warner were GDHS employees involved in the placement process for M.P. and her sister.[1] (See id. at pp. 5, 10–11.) Upon hearing of the Rosenbaums' interest in caring for M.P. and her sister, White and Warner facilitated the approval process for the Rosenbaums to obtain custody of the children. (Id. at pp. 11–14.) Because the Rosenbaums were not GDHS-approved foster parents, White labeled the Rosenbaums as "fictive kin," a designation for people "who [are] not related to the child by blood, marriage, or adoption but who[,] prior to [the child's] placement in foster care[,] [are] known to the family, ha[ve] a substantial and positive relationship with the child, and [are] willing and able to provide a suitable home for the child." (Doc. 1-1, pp. 8, 12 (citing O.C.G.A. § 15-11-2).) However, as White was aware, the Rosenbaums did not qualify for fictive kin status. (Id. at p. 12.) Indeed, according to the Complaint, during the approval process, White discovered that the Rosenbaums did not have

---

[1] DFCS employed Defendants White and Warner as a case manager and case manager supervisor, respectively. (Doc. 1-1, p. 5.)

any prior relationship with M.P.[2] (Id. at pp. 10–11.) Nonetheless, White labeled the Rosenbaums as fictive kin to increase their "chances of being approved because she considered [Jennifer] Rosenbaum a success story for foster children." (Id. at p. 12.) Warner also knew that the Rosenbaums did not qualify for "fictive kin" status but "chose to overlook [that] and . . . fail[ed] to report that the Rosenbaums were not fictive kin to M.P." (Id. at p. 13.)

White and Warner ultimately placed M.P. and her sister with the Rosenbaums. (Id. at p. 16.) Shortly thereafter, the children sustained various injuries while in the Rosenbaums' custody, which ultimately led to the death of M.P.'s sister. (Id. at pp. 16–21.) According to the Complaint, White and Warner failed to properly investigate and report these injuries. (Id.) The Rosenbaums faced criminal charges for their abuse of M.P. and her sister, and GDHS terminated White and Warner's employment for their violations of DFCS policy. (Id. at p. 21.)

## II.    Procedural History

Plaintiff Amanda Harrill, individually and as the adoptive parent of M.P., filed this action in the Tattnall County Superior Court on March 5, 2021. (Doc. 1, p. 1.) The Complaint alleges four different counts: (1) a negligence claim against the Rosenbaums in their individual capacities (Count I); (2) a negligence claim against GDHS for the acts and omissions of the Rosenbaums (Count II); (3) a negligence claim against GDHS for the acts and omissions of White and Warner (Count III); and (4) a Fourteenth Amendment substantive due process claim against White and Warner pursuant to 42 U.S.C. § 1983 (Count IV). (Doc. 1-1, pp. 3, 21–28.) Defendants subsequently removed the case to this Court. (Doc. 1.)

---

[2] According to the Complaint, M.P.'s biological mother and Jennifer Rosenbaum knew one another from childhood because they had been placed in foster care together. (Doc. 1-1, p. 10.) However, neither one had contacted the other "in years." (Id.)

Defendants Jennifer and Joseph Rosenbaum then filed the at-issue Motion to Dismiss, arguing that official immunity bars the negligence claim alleged against them in Count I because they were state employees as defined by the Georgia Tort Claims Act ("GTCA") and were acting within the scope of their official duties.[3] (Doc. 6.) Defendant GDHS and Plaintiff filed Responses in Opposition, (docs. 23, 24), and the Rosenbaums filed a Reply, (doc. 27). Defendant GDHS also filed a Reply to Plaintiff's Response in Opposition. (Doc. 26.)

## STANDARD OF REVIEW

A court may dismiss a complaint under Federal Rule of Civil Procedure 12(b)(1) when it lacks subject matter jurisdiction. Motions pursuant to Rule 12(b)(1) take one of two forms: a "facial attack" on subject matter jurisdiction based on the complaint's allegations taken as true or a "factual attack" based on evidentiary matters outside of the pleadings. McElmurray v. Consol. Gov't of Augusta-Richmond Cnty., 501 F.3d 1244, 1251 (11th Cir. 2007). "If the challenge is facial, the plaintiff is left with safeguards similar to those retained when a Rule 12(b)(6) motion to dismiss for failure to state a claim is raised." Id. (internal quotations omitted). Thus, "[a] 'facial attack' on the complaint require[s] the court merely to look and see if [the] plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in [the] complaint are taken as

---

[3] Despite citing to the GTCA's "official immunity" provision in their Motion to Dismiss, the Rosenbaums assert that they are entitled to the protections of "sovereign immunity." (Doc. 6, pp. 2–4); see also Davis v. Standifer, 621 S.E.2d 852, 856 (Ga. Ct. App. 2005) (noting the GTCA recognizes official immunity in O.C.G.A. § 50-21-25(a)). However, to clarify, sovereign immunity and official immunity are "distinct doctrines." State v. Int'l Indemnity Co., 823 S.E.2d 806, 810 (Ga. Ct. App. 2019). "[S]overeign immunity shields from suit the State and its departments and agencies, including claims against the State's officers or employees in their *official* capacity." Id. In contrast, "*official* immunity provides public officers and employees limited protection from suit in their *personal* capacity." Id. Here, Count I—the only claim asserted against the Rosenbaums—is alleged against them in their individual capacities. (See doc. 1-1, p. 21 ("Against Jennifer and Joseph Rosenbaum, individually").) Thus, the proper basis for dismissing that claim, if any, is official immunity rather than sovereign immunity. See, e.g., Glass v. Gates, 716 S.E.2d 611, 621 (Ga. Ct. App. 2011) ("Official immunity is applicable to government officials and employees sued in their individual capacities."); Sterling v. Sellers, No. 5:16-CV-00013-MTT, 2018 WL 10322040, at *1 (M.D. Ga. Dec. 17, 2018) ("Sterling's claims against the officers in their individual capacities are governed by the doctrine of official immunity.").

true for purposes of the motion." Id. (internal quotations omitted). Here, Defendants Jennifer and Joseph Rosenbaum raise a facial attack on subject matter jurisdiction. (Doc. 27, p. 2.)

## DISCUSSION

The Rosenbaums argue this Court lacks subject matter jurisdiction because the doctrine of official immunity bars Plaintiff's negligence claim against them. (See generally doc. 6.) Official immunity under the GTCA generally "protects state employees from being sued in their *personal* capacities." Shekhawat v. Jones, 746 S.E.2d 89, 92 (Ga. 2013). Indeed, under the GTCA, "[a] *state officer or employee* who commits a tort while acting within the scope of his or her official duties or employment is not subject to lawsuit or liability therefor." O.C.G.A. § 50-21-25(a) (emphasis added). Instead, the proper defendant in such a suit is the state governmental entity that employed the employee. See O.C.G.A. § 50-21-25(b); see also Davis, 621 S.E.2d at 856 ("Because the trial court properly held that Standifer was immune from suit, Davis' only potential avenue of recourse under state law was against the state governmental entity that employed Standifer.") (citing O.C.G.A. § 50-21-25(b)).

In Count I, the Complaint alleges that, "[a]s *foster parents*, [the Rosenbaums] were tasked with the duty to protect M.P. from harm . . . but negligently failed to do so." (Doc. 1-1, p. 21 (emphasis added).) The parties dispute whether, according to the allegations in the Complaint, the Rosenbaums are "state officers or employees" for purposes of the GTCA. (See docs. 6, 23, 24.) The GTCA defines a state officer or employee as "an officer or employee of the state . . . and persons acting on behalf or in service of the state in any official capacity, whether with or without compensation, but the term does not include any independent contractor doing business with the state." O.C.G.A. § 50-21-22(7). The definition explicitly includes "foster parents and foster children," id., but the GTCA fails to define a "foster parent." See Johnson v. Ga. Dep't of Human Res., 606 S.E.2d 270, 273 (Ga. 2004) ("The [GTCA] does not provide a definition of 'foster

5

parent.'"); Dep't of Human Servs. v. Duncan, 831 S.E.2d 4, 8 (Ga. Ct. App. 2019) ("'[F]oster parent' is not separately defined in the [GTCA]."). In Johnson, the Georgia Supreme Court borrowed the definitions of "foster parent" and "foster care home" from O.C.G.A. § 49-5-60, a Georgia statute that "protect[s] children placed in day-care centers or child-caring institutions," and applied those definitions to tort claims under the GTCA. 606 S.E.2d at 273 ("We believe the General Assembly meant by its use of 'foster parent' in GTCA that which it meant when it defined the term in [O.C.G.A. § 49-5-60]."). That statute defines a "foster parent" as "the person . . . who provide[s] care, lodging, supervision, and maintenance in a foster care home used by a child-placing agency." O.C.G.A. § 49-5-60(11). A "foster care home" is "a private home used by a child-placing agency which has been approved by the child-placing agency to provide 24[-]hour care, lodging, supervision, and maintenance for no more than six children who are unrelated to the foster parent or parents." O.C.G.A. § 49-5-60(10). A "'[c]hild placing agency' means any institution, society, agency, or facility, whether incorporated or not, which places children in foster homes for temporary care or for adoption." Duncan, 831 S.E.2d at 6 n.1 (quoting O.C.G.A. § 49-5-3(4)).

The Rosenbaums argue that they are entitled to dismissal at this stage of the litigation because Plaintiff's Complaint alleges that they were foster parents (and, thus, state employees) for purposes of the GTCA. (Doc. 6, pp. 2, 8 (citing doc. 1-1, p. 4).) As a result, according to the Rosenbaums, official immunity bars the negligence claim asserted against them. (Id. at pp. 4–5.) Plaintiff, on the other hand, argues that dismissal is not proper "based solely on [her] allegations that the Rosenbaums were state employees" because whether someone is a state employee for purposes of the GTCA is a "legal conclusion." (Doc. 24, pp. 7–8.) According to Plaintiff, the Court should only dismiss the Rosenbaums pursuant to a factual finding that the Rosenbaums were state employees. (Id. at pp. 8, 12, 15.) In contrast, GDHS argues that the Court should deny the

6

Rosenbaums' Motion to Dismiss because, despite the explicit allegation in Count I that the Rosenbaums were foster parents, (1) "the pleadings do not establish that the Rosenbaums were foster parents and therefore state employees under the GTCA" and (2) "the pleadings instead establish that this issue is controverted and evidence will need to be developed on this issue." (Doc. 23, pp. 5–6.)

The Complaint purportedly sets out "alternative theories of recovery." (Doc. 1-1, p. 3.) Among these theories of liability are Plaintiff's negligence claim against the Rosenbaums in their individual capacities (Count I) and the negligence claim against GDHS for the acts and omissions of the Rosenbaums (Count II). (Id. at pp. 3, 21–23.) If the Rosenbaums are deemed foster parents and, thus, state employees for purposes of the GTCA, then official immunity under the GTCA would shield them from suit, and the proper defendant in this case would be GDHS, the state agency that employed them, and not the Rosenbaums. See O.C.G.A. § 50-21-25(a), (b); see also O.C.G.A. § 50-21-22(7) ("'State officer or employee' . . . . include[s] foster parents and foster children."). In contrast, if the Rosenbaums are not deemed foster parents and, thus, are not state employees for purposes of the GTCA, then official immunity would not apply, and the proper defendants would be the Rosenbaums in their individual capacities, and not the state agency. See O.C.G.A. § 50-21-25(a) ("This article constitutes the exclusive remedy for any tort committed by a *state officer or employee*.") (emphasis added).

"It is a well-settled rule of federal procedure that plaintiffs may assert alternative and contradictory theories of liability." Adinolfe v. United Techs. Corp., 768 F.3d 1161, 1175 (11th Cir. 2014); see also Devengoechea v. Bolivarian Republic of Venezuela, 889 F.3d 1213, 1229 (11th Cir. 2018) ("[T]he Federal Rules of Civil Procedure allow a plaintiff to plead, without penalty, in the alternative."). Indeed, Federal Rule of Civil Procedure 8(d) permits a party to (1) "set out 2 or more statements of a claim . . . alternatively or hypothetically" and (2) "state as many

7

separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(2), (3); see also Allstate Ins. Co. v. James, 779 F.2d 1536, 1540 (11th Cir. 1986) ("Litigants in federal court may pursue alternative theories of recovery, regardless of their consistency. A party may plead alternative and inconsistent facts and remedies against several parties without being barred by the election of remedies doctrine.") (internal citations omitted). However, "alternative pleading does **not** relieve a plaintiff of its obligations under Rule 8(a) to state 'enough facts to state a claim to relief that is plausible on its face.'" Thomas v. Kamtek, Inc., 143 F. Supp. 3d 1179, 1188–89 (N.D. Ala. 2015) (emphasis in original) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 547 (2007)). Moreover, "Rule 8(d)(2) requires that 'alternative statements' be 'set out' in the pleading, a requirement that is generally met through 'either-or propositions' or 'if-then' allegations." Sun Life Assurance Co. of Can. v. Imperial Premium Fin., LLC, 904 F.3d 1197, 1213 n.16 (11th Cir. 2018); see also Fed R. Civ. P. 8(d)(2).

Early on, the Complaint alleges that "[a]t all times relevant, [the Rosenbaums were] employed by the State of Georgia as . . . foster parent[s]." (Doc. 1-1, p. 4.) The Complaint later alleges, however, that although the Rosenbaums "applied to be foster parents," they failed to complete the process when Jennifer Rosenbaum's "past as a foster child required her to complete additional documentation." (Id. at p. 10.) Thus, according to the Complaint, the Rosenbaums were not approved as foster parents when they "became interested in becoming foster parents to" M.P. and her sister. (Id. at pp. 10–11.) The Complaint then alleges that Defendant White "labeled the Rosenbaums as fictive kin to increase [their] chances of being approved" despite knowing that the Rosenbaums did not qualify for fictive kin status. (Id. at p. 12.) Defendants White and Warner ultimately placed M.P. and her sister with the Rosenbaums. (Id. at p. 16.) In Count I, Plaintiff alleges a negligence claim against the Rosenbaums individually and "incorporates" the prior allegations of the Complaint into that count, including the allegations that the state of Georgia

8

employed the Rosenbaums as foster parents. (Id. at p. 21.) In Count II, Plaintiff alleges a claim against GDHS "for the negligence of M.P.'s *foster parents* in the performance of ministerial duties." (Id. at p. 22 (emphasis added).) Specifically, within Count II, Plaintiff alleges that "*[a]s foster parents*, [the Rosenbaums] were tasked with the duty to protect M.P. from harm, including harm from each other, but negligently failed to do so." (Id. (emphasis added).) Like Count I, Count II expressly "incorporates the prior allegations," which include the allegations pertaining to the Rosenbaum's status as foster parents. (Id.)

Based on these allegations, Plaintiff failed to allege sufficient facts supporting her alternative claim against the Rosenbaums for negligence in Count I. Specifically, the Complaint does not include any alternative allegations that the Rosenbaums were *not* state employees or foster parents for purposes of the GTCA. (See doc. 1-1, pp. 2–29); Sun Life Assurance Co. of Can., 904 F.3d at 1213 n.16 ("Sun Life contends that it was free to plead a non-agency theory in the alternative. While true, it did not so plead. . . because Sun Life did not include [alternative statements]."). Rather than pleading alternative statements, Plaintiff reaffirmed her allegation that the state of Georgia employed the Rosenbaums as foster parents by incorporating all of the Complaint's prior allegations into Count I. (Doc. 1-1, p. 21.) Moreover, Plaintiff repeatedly referred to the Rosenbaums as foster parents throughout the entire Complaint. (See id. at pp. 2–29). This is insufficient to support Plaintiff's alternative theory of recovery in Count I. See Sun Life Assurance Co., 904 F.3d at 1213 n.16 (alternative theory of recovery inadequately pled where "in nearly each of its paragraphs under its conspiracy counts Sun Life seems to reaffirm its allegation that the producers were agents of Imperial, repeatedly referring to Imperial and '*its* . . . producers'") (emphasis in original).

While a court is not required to sua sponte grant leave to amend "when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend," Wagner

9

v. Daewoo Heavy Indus. Am. Corp., 314 F.3d 541, 542 (11th Cir. 2002), the Court, in the interest of justice, chooses to do so here, to provide Plaintiff with an opportunity to correct the discrete deficiencies discussed above. See Fed. R. Civ. P. 15(a)(2) (a party may amend its pleading with the Court's leave, and the Court should "freely give leave [to amend] when justice so requires"); see also In re Engle Cases, 767 F.3d 1082, 1108–09 (11th Cir. 2014) (courts need not allow leave to amend "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile"). Plaintiff has yet to amend her Complaint, there is no indication that an amendment would cause undue prejudice to Defendants, and an amendment would not clearly be futile. Further, it appears from Plaintiff's Complaint and her pleadings in response to the Motion to Dismiss that she intended to plead claims in the alternative but failed to properly do so for the reasons discussed above. Thus, the Court finds it appropriate to afford Plaintiff the opportunity to amend her Complaint to add any factual allegations she deems appropriate and to clarify those allegations that apply to each respective count in an effort to support and clarify her alternative negligence claim against the Rosenbaums in Count I.[4]

---

[4] While not raised by the parties, the Court points out that, because each count of the Complaint incorporates "the prior allegations," (doc. 1-1, pp. 21–23, 25), the allegations contained in each count are "rolled into every successive count on down the line." Weiland v. Palm Beach Cnty. Sheriff's Off., 792 F.3d 1313, 1324 (11th Cir. 2015). The Eleventh Circuit Court of Appeals has described similar complaints as "quintessential shotgun pleadings." See Strategic Income Fund, L.L.C. v. Spear, Leeds, & Kellogg Corp., 305 F.3d 1293, 1295 (11th Cir. 2002) (internal quotations omitted); see also Wagner v. First Horizon Pharm. Corp., 464 F.3d 1273, 1279 (11th Cir. 2006) ("Shotgun pleadings are those that incorporate every antecedent allegation by reference into each subsequent claim for relief or affirmative defense."). Thus, the Court also affords Plaintiff the opportunity to correct this deficiency and identify within each separate count the specific factual allegations she contends support each count. Plaintiff is forewarned that if she continues to generally incorporate all prior allegations into each count, that could provide a basis for the dismissal of her Amended Complaint.

## CONCLUSION

Based on the foregoing, the Court **DENIES, without prejudice,** the Rosenbaums' Motion to Dismiss. (Doc. 6.) Furthermore, the Court **DIRECTS** Plaintiff to file, within **SEVEN (7) DAYS** of this Order, a comprehensive operative complaint entitled "Plaintiff's First Amended Complaint." Therein, Plaintiff shall (1) allege facts, if any, that support her alternative negligence claim against the Rosenbaums asserted in Count I of the original Complaint, and (2) identify and include within each separate count the specific factual allegations that Plaintiff contends support each count. Plaintiff **SHALL NOT** make any additions, modifications, or amendments to her Complaint other than those explicitly ordered herein; Plaintiff has not been granted leave to assert new claims or name new defendants. All Defendants **SHALL** file answers or other responsive pleadings within **TWENTY-ONE (21) DAYS** of Plaintiff's date of filing. Plaintiff is hereby advised that the failure to timely file this First Amended Complaint that comports with the instructions outlined herein may result in the dismissal of her claim, in Count I, against the Rosenbaums.

**SO ORDERED**, this 25th day of January, 2022.

_____
R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA